Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

JSG

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 7318 | DATE | 1/8/2004 |
| CASE TITLE | U.S. ex rel. DEDRICK COLEMAN vs. EUGENE McADORY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The petition for a writ of *habeas corpus* [1-1] is denied. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JAN 1 2 2004 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 17 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 1/8/2004 date mailed notice | |
| CB courtroom deputy's initials | | PW mailing deputy initials | |
| | Date/time received in Central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA *ex rel.*
DEDRICK COLEMAN,

    Petitioner,

v.

EUGENE McADORY,

    Respondent.

No. 03 C 7318

Suzanne B. Conlon, Judge

DOCKETED
JAN 1 2 2004

## MEMORANDUM OPINION AND ORDER

Dedrick Coleman was convicted in state court of first degree murder for killing Lance Hale and Avis Welch. He was also convicted of armed robbery and home invasion in connection with those murders. Coleman waived his right to be sentenced by a jury. The court sentenced him to death for the murders. He received additional prison sentences for his other convictions. The Illinois Supreme Court affirmed. *People v. Coleman*, 158 Ill.2d 319, 633 N.E.2d 654 (1994). The United States Supreme Court denied *certiorari. Coleman v. Ill.*, 513 U.S. 881, 115 S. Ct. 215 (1994). In 1995, Coleman sought post-conviction relief, basing his claim in large part on inconsistent statements of an eyewitness. The trial court dismissed his petition without an evidentiary hearing. The Illinois Supreme Court reversed and remanded the post-conviction petition to the trial court for a hearing on the witness' statements. *People v. Coleman*, 183 Ill.2d 366, 701 N.E.2d 1063 (1998). Following an evidentiary hearing, the trial court denied Coleman's petition. Once again, Coleman appealed to the Illinois Supreme Court. The trial court's decision was affirmed. *People v. Coleman*, 206 Ill.2d 261, 794 N.E.2d 275 (2002). In the meantime, Coleman filed a petition for executive

1

clemency with Governor George Ryan. The governor commuted Coleman's death sentence to life imprisonment on January 10, 2003.

Coleman petitions for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. The petition essentially consolidates multiple claims for relief Coleman raised on direct appeal and in his post-conviction petitions. Coleman revives the following claims asserted on direct appeal of his conviction: (1) evidence of his involvement in the murder of Alex McCullough was improperly admitted; (2) he was improperly questioned regarding prior use of aliases; (3) he was improperly cross-examined about the prosecution's failure to offer a plea bargain; (4) in closing remarks, the prosecutor prejudicially referred to him as "the devil," and misinformed the jury that in order to believe Coleman's testimony, they must conclude "all of the four or five million people in the city" were "liars"[1]; (5) he was denied effective assistance of counsel because his trial counsel failed to preserve certain issues for direct appeal; and (6) new counsel should have been appointed to prosecute his post-trial *pro se* claims attacking the performance of trial counsel.

In post-conviction proceedings, Coleman raised additional claims for relief: (7) the prosecution concealed exculpatory statements by its witness Aldene Lockett; (8) the prosecution withheld evidence that investigating officer Maslanka engaged in misconduct against other criminal suspects; (9) his trial counsel was ineffective because he failed to interview Lockett and did not investigate the circumstances of McCullough's murder; and (10) the prosecution intentionally introduced the perjured testimony of two witnesses who testified Coleman confessed to the murders of Hale and Welch to them.

---

[1]*Coleman*, 158 Ill.2d at 345-46, 633 N.E.2d at 667-668 (quoting the trial transcript).

# BACKGROUND

Factual findings of a state trial or appellate court are presumed correct in a federal *habeas* proceeding unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The record does not reveal any evidence contrary to findings of the state courts. Indeed, Coleman reproduces the Illinois Supreme Court's factual summary in his *habeas* petition. Pet. at p. 5, citing *Coleman*, 158 Ill.2d at 326-330, 633 N.E.2d at 659-661. Accordingly, the court adopts the Illinois Supreme Court's statement of facts.

Lance Hale and Avis Welch were murdered on the first floor of a two-flat on the southside of Chicago. This first floor apartment was a drug house owned and operated by Alex McCullough. About a month before Hale and Welch were killed, Coleman argued with McCullough over Coleman's alleged theft of seven ounces of cocaine and $2,000. McCullough was also dating Coleman's sister Fredricka. Victor Truell, one of Coleman's associates, testified Coleman stopped by his home the night before the murders and informed Truell of his plan to rob McCullough's drug house. At this meeting, Coleman wore a Bulls jacket, black pants and gloves, and gym shoes. He carried a gun identified by Truell at trial. Aldene Lockett, who lived in the apartment above the drug house in the two-flat, testified that around 5:30 a.m. the day of the murders, she heard voices on the first floor. Shortly thereafter, Lockett heard a shot and something fall, then two more shots and the sound of an opening door. She looked out her window and saw a young man between 5 feet 6 inches and 5 feet 8 inches tall, dressed in black and wearing sunglasses.

Two of Coleman's associates testified Coleman confessed murdering Hale and Welch. Truell testified Coleman returned to his house after the shootings and confessed to killing Hale and Welch in gruesome detail. Francisco Rico Balberas testified Coleman told him he shot a "boy and a girl"

on the south side of the city on April 26, 1989. *Coleman,* 158 Ill.2d at 326-330, 633 N.E.2d at 659-661.

The prosecution introduced evidence that suggested Coleman invaded the drug house in retaliation for his dispute with McCullough. To establish this connection, the prosecution introduced evidence of McCullough's murder a week later, including statements by Coleman's sisters. A few days after the Hale and Welch shootings, Coleman, his girlfriend Dorothy, Balberas and Truell met at Coleman's sisters' apartment. Coleman warned his sisters they should stay away from McCullough because someone ordered his murder. Coleman denied giving the order, but asked his sisters about McCullough's personal habits, such as whether he was armed. Just as Coleman and his associates prepared to leave, McCullough arrived at the apartment. Truell attempted to close the door and prevent McCullough's entry. McCullough overpowered Truell and forced his way into the apartment. Both McCullough and Coleman opened fire. McCullough was fatally wounded. One of Coleman's sisters testified Coleman ducked behind her; holding the back of her neck, Coleman used her to shield himself from gunfire. Coleman and his associates then fled the scene.

After McCullough's murder, Coleman met Truell at Truell's apartment. Over a bottle of champagne, Coleman told Truell he wanted it said he shot McCullough in self-defense. Coleman and Truell then turned themselves into the police. Despite their agreement, Truell informed the police of Coleman's role in McCullough's homicide as well as Coleman's involvement in the murders of Hale and Welch.

On the basis of this information, police placed Coleman in a lineup viewed by Aldene Lockett on May 2, 1989 – one day after McCullough's murder, and less than one week after Lockett saw a man leave her building. Officer Tony Maslanka conducted the line-up. Lockett identified

4

Coleman as fitting the height and physical description of the man she saw leaving the drug house. Maslanka then asked each line-up participant to put on sunglasses. Only Coleman refused. Lockett then reiterated Coleman resembled the man she saw, but that she could not positively identify Coleman because she was not wearing glasses the morning she saw the man leave the scene of the murders. Maslanka testified he concluded Lockett's identification was tentative because she did not positively identify Coleman. Lockett stated the man she identified in the lineup "could have been" the gunman because he had the "same height, and build, and color." *Id.* Truell and Coleman's sisters identified the pistol Coleman used in all three homicides.

## DISCUSSION

### I. Procedural Default

Before reaching the merits of Coleman's petition, the court must determine whether his claims are procedurally barred. *See Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000). Under § 2254, a petitioner must fairly present his federal claims to the state courts before a federal court may grant *habeas corpus* relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Duncan v. Henry*, 513 U.S. 364, 365 (1995). Moreover, a federal court may not reach the merits of a *habeas* petition when a state court dismissed the same claims because of a state procedural bar. *See Jenkins v. Nelson*, 157 F.3d 485, 491-92 (7th Cir. 1998), citing *Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977). According to the state, the majority of Coleman's claims are procedurally defaulted.

The doctrine of procedural default bars federal *habeas* review if the underlying state court decision rests on a state law ground that is both "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 591 U.S. 722, 730 (1991). However, *habeas* review is not foreclosed unless the state court clearly and expressly based its judgment on a state

5

procedural bar. *See Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir. 1998), quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989). In Illinois, both a trial objection and a written post-trial motion are necessary to preserve a trial court error for appeal. Otherwise, any potential challenge is waived. *See Coleman*, 158 Ill.2d at 333-338, 633 N.E.2d at 662-64, citing *People v. Enoch*, 122 Ill.2d 176, 522 N.E.2d 1124 (1988).

## A.  Direct Appeal

The Illinois Supreme Court determined Coleman procedurally defaulted many of the claims he brought on direct appeal because he failed to object at trial or to file a proper post-trial motion. The Illinois Supreme Court concluded Coleman's failure to object at trial or file a post-trial motion precluded review of: (1) admission of evidence regarding McCullough's murder; (2) whether the prosecution improperly inquired into Coleman's previous use of aliases in unrelated crimes; (3) whether questions regarding the prosecution's failure to offer a plea bargain denied Coleman his right to a fair trial; and (4) whether the prosecutor's characterization of Coleman as the devil and alleged misstatements of legal standards violated his right to a fair trial. *Coleman*, 158 Ill.2d at 333-346, 633 N.E.2d at 662-669. Waiver is an independent and adequate state procedural ground for dismissal. *See Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003) (failure to raise objection in post-trial motion resulted in procedural default precluding *habeas* review). Accordingly, claims 1, 2, 3, and 4 are procedurally defaulted because of Coleman's failure to raise these issues at trial or in post-trial proceedings.

## B.  Post-conviction Proceedings

Coleman contends he was denied a fair trial because the prosecution introduced perjured testimony by Victor Truell and Francisco Balderas. Coleman asserted this claim in his post-

conviction petition to the trial court, but admits he abandoned the claim on subsequent appeal to the Illinois Supreme Court. Pet. at p. 31a; *People v. Coleman*, 183 Ill.2d 366, 701 N.E.2d 1063 (1998). Coleman's failure to pursue this claim on appeal bars federal *habeas* review. *Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003), citing *O'Sullivan*, 526 U.S. at 845. Coleman's tenth claim, that the prosecution knowingly introduced perjured testimony, is procedurally defaulted.

### C. Cause and Prejudice

Procedural default precludes reaching the merits of Coleman's claims unless he demonstrates good cause for the default, or that failure to consider his claims will result in a fundamental miscarriage of justice. *Anderson v. Cowan*, 227 F.3d 893, 899-900 (7th Cir. 2000), citing *Coleman*, 501 U.S. at 750. In his fifth claim, Coleman contends he was denied effective assistance of counsel because his trial attorney failed to preserve these errors for appeal. *See Strickland v. Washington*, 466 U.S. 668 (1984). "Attorney error that constitutes ineffective assistance of counsel is cause to set aside procedural default." *Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003), quoting *Franklin v. Gilmore*, 188 F.3d 877, 883 (7th Cir. 1999). However, Coleman does not argue his procedural default should be excused because his counsel was inadequate. Instead, he styles his *Strickland* claim as a separate constitutional basis for relief. *See Lee*, 328 F.3d at 900-902 (distinguishing between the two approaches). Coleman fails to argue cause or prejudice for his procedural default. Therefore, claims 1, 2, 3, 4, and 10 are procedurally defaulted.

### II. Remaining Claims

Claims 5 through 9 are reviewed on the merits. Coleman is not entitled to a writ of *habeas corpus* unless the Illinois Supreme Court's decisions are contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C.

7

2254(d)(1); *Williams v. Taylor*, 528 U.S. 362, 404-5 (2000). He bears the burden of demonstrating the state court's decision was an objectively unreasonable application of the law or was premised on an unreasonable reading of the facts. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

A.  **Direct Appeal**

**Claim 5: Effectiveness of Trial Counsel**

Coleman contends his trial counsel was ineffective because he failed to properly preserve grounds for appealing his conviction. He argues trial counsel did not protect his right to appeal: (1) evidence related to his use of aliases; (2) cross-examination questions regarding the lack of a plea offer; (3) impeachment of his character witness, Manny Vasquez; (4) introduction of victim impact evidence during sentencing; (5) improper closing arguments; (6) the finding Coleman was incapable of rehabilitation; (7) application of the death penalty on the basis of two aggravating factors. The Illinois Supreme Court rejected these claims. *Coleman*, 158 Ill.2d at 349-50, 633 N.E. 2d at 670. The Court explained the issues Coleman's counsel failed to preserve "are, for the most part, without merit, and did not prejudice the defendant." *Id.*

Under *Strickland*, an attorney's performance is constitutionally defective if it falls below an objective standard of reasonableness, and there is a reasonable probability "but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688. Coleman must demonstrate the Illinois Supreme Court applied *Strickland* in an objectively unreasonable manner. 28 U.S.C. § 2254(d); *see also Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997) (state court application of *Strickland* accorded deference under § 2254(d)(1)); *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Woodford v. Garceau*, 538 U.S. 202 (2003).

8

Coleman contends the result on appeal would have been different if the trial court's decisions had not been reviewed under the deferential plain error standard. However, he has not met his burden of demonstrating the Illinois Supreme Court's application of *Strickland* was objectively unreasonable. The Court proceeded directly to the prejudice prong of the *Strickland* test and determined Coleman's claims were meritless. *Coleman*, 158 Ill.2d at 349-50, 633 N.E. 2d at 670. The Court, utilizing plain error review, held questions about Coleman's use of aliases was proper. *Id.* at 339, 633 N.E.2d at 665. As to Coleman's second argument, that he was prejudiced by improper questions about the lack of a plea offer, the trial court cured any resulting prejudice by instructing the jury to disregard the questions after sustaining his counsel's objections. *Id.* at 341, 633 N.E.2d at 666. Similarly, any harm caused by improper questioning of Vasquez was cured by the judge's instruction to disregard the questions. *Id.* The Supreme Court found testimony by "life and death" witnesses was harmless. *See id.* at 344-45, 633 N.E.2d at 667. The Court held the prosecutor's improper closing remarks did not prejudice Coleman because the comments were isolated and the prosecutor did not dwell on them. *Id.* at 345-349, 633 N.E.2d at 668-69. The trial court instructed the jury that closing arguments are not evidence, eliminating the possibility of prejudice. Finally, the Illinois Supreme Court noted that the evidence against Coleman was "not closely balanced." *Id.* at 349, 633 N.E.2d at 669. Indeed, prior to the shootings, Coleman told Truell he was going to "hit" McCullough's drug house. Coleman admitted he murdered Hale and Welch to four persons; all testified at trial. *Id.* at 334, 633 N.E.2d at 662. Lockett testified a man fitting Coleman's description left the drug house after she heard the shots. *Id.* The gun Coleman used to kill McCullough matched witnesses' description of the gun used to kill Hale. *Id.* The record does

not support a conclusion that the failure of Coleman's counsel to preserve these issues for appeal was outcome determinative under *Strickland.*

### Claim 6: Denial of new counsel to attack performance of trial counsel

The trial court denied Coleman's post-trial request for new counsel to assist him in pursuing *pro se* motions alleging the ineffectiveness of his trial counsel. *Id.* at 351-52, 633 N.E.2d at 670-71. Coleman filed two *pro se* post-trial motions. The first argued his trial counsel was ineffective because: (1) he failed to file pre-trial motions to quash Coleman's arrest, for a preliminary hearing, and to suppress evidence; (2) he failed to file a motion for a new trial; and (3) he discouraged his mitigation witnesses from testifying. The second *pro se* post-trial motion alleged prosecutorial misconduct and that Lockett's testimony was inconsistent. Because these motions challenge the effectiveness of trial counsel, Coleman believes a conflict of interest prevented his attorney from vigorously pursuing his post-trial motions. *See People v. Nitz,* 143 Ill.2d 82, 572 N.E.2d 895 (1991) (discussing Illinois requirements for appointment of new counsel). Coleman did not predicate his appeal to the Illinois Supreme Court on the merits of these post-trial petitions nor does he urge review of their merits in his *habeas* petition.

Illinois law does not require that new counsel be appointed whenever a defendant presents a motion challenging the effectiveness of trial counsel. *See Nitz,* 143 Ill.2d at 134, 572 N.E.2d 895. When a defendant presents a *pro se* motion attacking his attorney's competence, the trial court is obligated to initiate a preliminary investigation into the factual matters underlying the claim. *Id.* If the claim lacks merit, new counsel is unnecessary. Alternatively, counsel should be appointed if the "allegations show possible neglect of the case." *Id.* The Illinois Supreme Court found the trial court conducted a preliminary investigation into the strength of Coleman's various claims and determined

10

his claims were spurious and lacked merit. *Coleman*, 158 Ill.2d at 351-52, 633 N.E.2d at 670-71. The Court agreed with the trial court's assessment of Coleman's claims, noting his claims were factually insufficient; even if true, Coleman failed to establish prejudice. The Court adopted the trial court's finding that Coleman's attorney did not neglect the case, but rather represented Coleman "very, very well." *Id.* at 351, 633 N.E.2d at 670.

In his *habeas* petition, Coleman merely recites the procedural history of his claim and cites *Strickland*; he makes no argument that denial of new counsel was objectively unreasonable. *See U.S. ex rel. Davilla v. Clark*, 159 F. Supp.2d 1081, 1086 (N.D.Ill. 2001); *Woodford*, 537 U.S. at 25 (petitioner bears the burden of establishing claim for relief). Accordingly, the claim conclusively lacks merit.

## B. Post-conviction Appeals

### Claim 7: Exculpatory statements by Aldene Lockett

In post-conviction proceedings, Coleman alleged the prosecution violated its duties under *Brady v. Maryland*, 373 U.S. 83 (1963), because of failure to disclose Lockett's exculpatory statements. The Illinois Supreme Court reversed the trial court's denial of relief on this issue and remanded the case to the trial court for an evidentiary hearing as to whether Lockett made exculpatory statements, and whether the prosecution concealed those statements. *See Coleman*, 183 Ill.2d 366, 396, 701 N.E.2d 1063, 1078-79 (1998) (determining that if Coleman's allegations were true, a *Brady* violation may have occurred requiring a hearing). After the evidentiary hearing, the trial court found Lockett's testimony lacked credibility and denied Coleman's claim. Relying on the results of the evidentiary hearing, the Illinois Supreme Court affirmed. *Coleman*, 206 Ill.2d at 283-87, 794 N.E.2d at 290-91. Coleman now contends he was deprived of a full and fair evidentiary

11

hearing because the trial court improperly limited cross-examination of Maslanka, Panarese and Kelly. He also argues the failure to disclose Lockett's doubts about Coleman's identity and Maslanka's history of misconduct violated the prosecution's obligation to disclose exculpatory and impeachment evidence. Finally, Coleman reiterates his original *Brady* claim that Lockett's allegedly exculpatory statements should have been disclosed.

At trial, Lockett testified Coleman "could have been" the man she saw leaving the drug house because he resembled the man's height, build and color. *Coleman*, 206 Ill.2d at 266-67, 794 N.E.2d at 280-81. In his post-conviction petitions, Coleman submitted an affidavit by Lockett that undermined her trial testimony. Lockett attested police officers encouraged her to identify Coleman in the line-up despite her statements Coleman "was not dark enough." *See id.* at 268, 794 N.E.2d at 281. Lockett attested she recognized the man leaving the apartment as someone from the neighborhood and that she did not recognize Coleman. Lockett attested that during the investigation, she informed the prosecuting attorney Coleman did not resemble the man she saw leaving the apartment. According to Lockett, the prosecution attempted to corrupt her testimony by frequently calling upon her to "to go over [her] story to make sure it didn't change." *Id.* She accused the prosecution of promising to help her move back to her home in Alabama in return for her testimony incriminating Coleman. *Id.* She complained the prosecution failed to live up to this purported bargain. Finally, Lockett attested she was never contacted by defense counsel during the trial. *Id.*

At the post-conviction evidentiary hearing, Lockett reviewed her affidavit and affirmed it was true. *Id.* However, cross-examination probed discrepancies between Lockett's affidavit and her previous statements. Although Lockett's affidavit claimed she recognized the man leaving the apartment as a person from the neighborhood, at the evidentiary hearing she stated she could not

remember if she told a detective during her initial interview after the murders that she had never seen the man before. She admitted that in a 1999 interview with Coleman's post-conviction counsel, she acknowledged she "did not remember that part of her affidavit." *Id.* at 270, 794 N.E.2d at 282. Lockett also testified she saw the gunman's face for less than a second and that she was unable to say whether he was a dark-skinned black male of medium height and build. *Id.* Lockett's remand testimony significantly contradicted her post-conviction affidavit.

At the hearing, Lockett denied she told Maslanka that Coleman matched the height, build and color of the man who left her building. She stated that Coleman's skin tone was darker. However, on cross-examination, Lockett admitted she selected Coleman from the line-up and that Coleman resembled the man who left her apartment. Lockett explained she did not testify that the gunman had a darker skin tone than Coleman because "[they] didn't ask [her]." *Id.* Lockett then added, "I don't know. I can't remember ten years ago. It's been a long time." *Id.*

The remainder of Lockett's testimony at the remand hearing further undermined the credibility of her affidavit. Although she denied in her affidavit that she spoke with Coleman's attorneys, at the hearing she testified she was uncertain to whom she had spoken ten years earlier; she could not remember speaking with anyone other than Kelly. She admitted she may have stated in her affidavit that she remembered recognizing the gunman. In her 1999 interview with post-conviction counsel, Lockett stated that she did not remember making that statement.

Lockett's affidavit was also undermined by Maslanka's testimony; Vernon Jasper, the public defender's investigator; Coleman's trial attorney Nicholas Panarese; and prosecuting attorney Michael Kelly. Maslanka denied Lockett's accusations that he influenced her to identify Coleman

13

in the line-up and repeated his original trial testimony: Lockett identified Coleman as resembling the gunman. Jasper testified that he could not recall interviewing Lockett. Panarese stated that he attempted to interview Lockett numerous times and was rebuffed. Panarese explained he chose not to question Lockett about her refusal to be interviewed to avoid "the fact that she may or may not have been threatened." *Id.* Kelly denied Lockett's allegation he agreed to assist her in moving to Alabama in exchange for her testimony. He testified she did not tell him that Coleman's complexion was lighter than the gunman's, and that he never asked Lockett if she had exculpatory information. Finally, Kelly testified that Lockett told him she had been threatened and he relayed that information to Panarese. The trial court denied Coleman's attempts to question Kelly about his office's practice of searching for exculpatory evidence. At the conclusion of the remand hearing, the trial court found Lockett's memory and manner while testifying were poor and unworthy of credence. *Coleman,* 206 Ill.2d at 277, 794 Ill.2d at 286. The Illinois Supreme Court affirmed, finding "nothing in the record remotely suggests that the prosecution committed a *Brady* violation." *Id.* at 286, 794 N.E.2d at 291. Coleman must show the Illinois Supreme Court's application of *Brady* was objectively unreasonable. *Woodford,* 537 U.S. at 25.

Other than reiterating Lockett's affidavit, Coleman fails to advance any evidence that the prosecution denied access to exculpatory information. The record amply supports the trial court's determination that Lockett's post-trial statements were unreliable and her testimony at the post-conviction hearing lacked credibility. On this record, the Illinois Supreme Court's application of *Brady* was objectively reasonable: no *Brady* violation could occur in the absence of exculpatory evidence. *Coleman,* 206 Ill.2d at 285-86, 794 N.E.2d at 290-91. Therefore, Coleman's claim that

14

the prosecution violated its *Brady* duties by failing to disclose Lockett's alleged inconsistent statements lacks merit.

Coleman argues he was entitled to discover evidence that Maslanka regularly tortured suspects and falsified evidence. Similarly, Coleman asserts it was improper for the trial court to restrict his opportunity to question Kelly during the post-conviction evidentiary hearing about his knowledge of his obligation to seek and report exculpatory evidence during a criminal investigation. This court will not review evidentiary questions unless there is a denial of fundamental fairness or the denial of a specific constitutional right. *Stomner v. Kolb*, 903 F.2d 1123, 1128 (7th Cir. 1990). The Illinois Supreme Court properly held both lines of questioning were immaterial to Lockett's credibility. *Coleman*, 206 Ill.2d at 286-87, 794 N.E.2d at 292. Questioning Maslanka about improper interrogation of prior suspects was immaterial to whether Lockett provided her testimony in exchange for Kelly's promises of assistance. There was no evidence that Maslanka engaged in misconduct in Coleman's case, nor did Lockett testify she gave Kelly exculpatory information. *Id.* Coleman fails to establish the prosecution suppressed exculpatory information.

### Claim 8: Prior accusations of misconduct against Maslanka

Coleman contends the prosecution violated its *Brady* obligation by failing to disclose evidence of Maslanka's prior misconduct. A *Brady* violation occurs only where the evidence is material to guilt or punishment. *U.S. v. Bagley*, 473 U.S. 667, 682 (1985). Undisclosed impeachment evidence is material when there is a reasonable probability the outcome of the trial proceeding would have been different. *Id.* The Illinois Supreme Court held allegations against Maslanka in other cases were irrelevant to any issue Coleman raised and would not have tended to impeach Maslanka's testimony about the line-up. *Coleman*, 206 Ill.2d at 288, 794 N.E.2d at 292.

15

Coleman has not alleged Maslanka engaged in misconduct, nor does the record suggest Maslanka conducted a suggestive line-up. *Id.* Coleman has not established the Illinois Supreme Court's application of *Brady* was unreasonable. Accordingly, Claim 8 is denied.

### Claim 9: Ineffectiveness of trial counsel

Coleman contends his trial attorney was ineffective because he neither interviewed Lockett nor investigated McCullough's shooting. Counsel is ineffective if his performance falls below an objective standard of reasonableness and there is a reasonable probability his inadequacies were outcome determinative. *Strickland*, 466 U.S. at 688.

The Illinois Supreme Court initially ruled counsel's failure to interview Lockett, if true, may have violated Coleman's sixth amendment rights. The Court ordered the issue to be fleshed out on remand in an evidentiary hearing. At the remand hearing, Lockett did not testify Panarese failed to interview her, but rather that she did not remember speaking with him. *Coleman*, 206 Ill.2d at 284, 794 N.E.2d at 289-90. Lockett made this statement in an unreliable post-trial affidavit. *Id.* Moreover, Panarese testified Lockett refused his attempts to interview her. Accordingly, Coleman failed to show Panarese was ineffective. The Illinois Supreme Court's conclusions on this issue were not objectively unreasonable.

The Illinois Supreme Court rejected Coleman's claim that Panarese's failure to investigate McCullough's murder violated his sixth amendment right to counsel. Coleman contended Panarese should have inquired into whether McCullough was the aggressor when Coleman shot and killed him. As explained by the Illinois Supreme Court, even if true, Coleman fails to establish prejudice. The jury was aware McCullough may have initiated the gunfight. Coleman testified about his version of the shooting. Thus, Coleman's claim fails to establish the prejudice prong of *Strickland*.

16

## CONCLUSION

Claims 1, 2, 3, 4, and 10 are procedurally defaulted. Coleman has failed to show claims 5, 6, 7, 8 and 9 rest on the Illinois Supreme Court's unreasonable applications of federal law. Accordingly, the petition for a writ of *habeas corpus* is denied.

January 9, 2004

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge